**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**HOMEWOOD COMPANY, L.L.C.;**
**LODES, INC.; and CARY S. and**
**DOROTHY B. BIERDEMAN**
**REVOCABLE TRUST**                                        **PLAINTIFFS**

**v.**                                        **CASE NO. 3:14-cv-00907-HTW-LRA**

**CITY OF PEARL, MISSISSIPPI;**
**and BRAD ROGERS, MAYOR**                                **DEFENDANTS**

---

**PLAINTIFFS' MEMORANDUM BRIEF IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

---

COME NOW Plaintiffs, Homewood Company, L.L.C.; Lodes, Inc.; and Cary S. and

Dorothy B. Bierdeman Revocable Trust, by and through the undersigned counsel, and

submit this Memorandum Brief in Support of Their Motion for Preliminary Injunction.

**FACTS**

The Plaintiffs are owners and operators of five manufactured home parks located in

Pearl, Mississippi. Plaintiff Homewood owns and operates Grove Acres, which has been

continually operated as a manufactured home park within the City of Pearl, Mississippi, for

over 50 years and consists of approximately 11 acres. Grove Acres is divided into 101

individual lots. The Plaintiff Homewood also owns and operates Oak Lake, which has been

continually operated as a manufactured home park within the City of Pearl, Mississippi, for over 20 years and consists of approximately 23 acres. Oak Lake is divided into 85 lots.

Robinson Park and Ramona Park have been continually operated as manufactured home parks within the City of Pearl, Mississippi, for approximately 40 years, since before the City was incorporated. They are currently owned and operated by Lodes, Inc. Robinson Park currently consists of 78 individual lots, while Ramona Park consists of eight individual lots.

Bierdeman Park has been continually operated as a mobile home park by the Bierdeman family within the City of Pearl, Mississippi, for approximately 50 years. Bierdeman Park consists of 129 individual lots located on approximately 48 acres.

In 2009, the City of Pearl, Mississippi, passed a Revised Zoning Ordinance ("the 2009 Ordinance"). Under the terms of the 2009 Ordinance, Grove Acres, Oak Lake, Robinson Park, Ramona Park and Bierdeman Park are each a "nonconforming use." Mississippi law recognizes a nonconforming use as a vested property right of the property owner, which runs with the land and is a well-established substantial right. At all times since Plaintiffs began operating the aforementioned manufactured home parks, up until approximately 2010, the City's practice was to routinely allow them to replace on the same lot any manufactured home which was removed from a lot.

2

Beginning in approximately 2010, the City of Pearl refused to allow these manufactured home parks to replace manufactured homes removed from lots, contending that the removal of the manufactured home previously located on the lot eliminates the nonconforming status of that individual lot.

Using its 2009 Zoning Ordinance, the City of Pearl successfully shut down two manufactured home parks in the City. In 2013 the City of Pearl reported the following:

> 53.   Since the 2009 [*sic*] at least two (2) pre-existing "parks" have come into full compliance with the Zoning Ordinance. One of these "parks," Shady Grove Park, 2526 Old Brandon Road, located approximately 100 yards east of the City Hall Complex and approximately 300 yards from Grove Acres, involved the removal of approximately ten (10) nonconforming structures. Shady Circle Park was located at 3717 Old Brandon Road (near Paul Truitt church) and involved the removal of approximately fifty-six (56) nonconforming structures. The results have met with universal approval and gratitude, especially from the neighboring property owners. The park owners begrudgingly complied with the restrictions, but ultimately complied.

(Exhibit 1, City of Pearl Legislative Findings of Fact and Conclusions.)[1] There were notably no safety issues cited for the removal of these two manufactured home parks. Safety concerns for the manufactured home park tenants were also not likely issues for the neighboring property owners, who expressed their "universal approval and gratitude" at the removal of the manufactured homes.

---

[1]   All exhibits referenced herein are attached to Plaintiffs' Motion for Preliminary Injunction.

3

Plaintiffs, however, have refused to allow Defendants to force them out of business.

In an appeal action filed by Homewood in the Circuit Court of Rankin County, Mississippi,

in *Homewood Company, L.L.C. v. City of Pearl, Mississippi*, Civil Action No. 2013-252, the

Circuit Court (Judge Emfinger) considered whether the City of Pearl's denial in 2013 of a

permit to Homewood to replace a mobile home in its Grove Acres Park was a violation of

Homewood's constitutional right to enjoy its property. The court stayed consideration of this

matter until the Mississippi Supreme Court rendered its decision in *Cleveland MHC, LLC v.

City of Richland, Mississippi, et al.*, 163 So. 3d 284 (Miss., May 14, 2015). (Exhibit 2.) In

*Cleveland*, the Mississippi Supreme Court found that the City of Richland's interpretation

of its zoning ordinance to prohibit a property owner's lawful continuation of the property's

nonconforming use deprived the property owner of his constitutional right to enjoy his

property.

After the Mississippi Supreme Court rendered its decision in *Cleveland*, the Rankin

County Circuit Court issued an order which reversed the action taken by the Board of

Aldermen of the City of Pearl as to Homewood and stated the following:

> Homewood owns a mobile-home park that has operated as a nonconforming
> use for decades. Based upon the authority of the *Cleveland* ruling, any effort
> by the City of Pearl to enact, enforce or interpret the 2009 ordinance to prevent
> Homewood from the lawful continuation of the property's nonconforming use
> is a violation of Homewood's constitutional right to enjoy its property. . . .
>
> **IT IS, THEREFORE, ORDERED** that, to the extent the action by the City
> would prohibit the replacement of a manufactured home that is removed from

4

the park with another manufactured home, such action is hereby reversed. The City may not enact, enforce and/or interpret the 2009 ordinance so as to prevent the lawful continuation of a nonconforming use.

(Order to Reverse Action Taken by the Board of Aldermen of the City of Pearl, Mississippi, Exhibit 3.)

On or about September 3, 2015, the City of Pearl sent a letter to counsel for the Plaintiffs herein re "Homewood Requests for Information" and stated that as of June 2, 2015, the City of Pearl had adopted a resolution directing the Department of Community Development to comply with the holding in the *Cleveland v. City of Richland* case and would, therefore, recognize the Grove Acres Park's lawful continuation of its manufactured home park as a nonconforming use. However, the City of Pearl then, in an obvious attempt to circumvent the rulings of the Mississippi Supreme Court and the Rankin County Circuit Court stated that Homewood had not complied with the City's Rental Housing Code, Property Maintenance Code and Fire Prevention Code, and would not be allowed to replace manufactured homes in the parks pending the outcome of the City's counterclaim in this litigation. (City of Pearl correspondence, September 3, 2015, Exhibit 4.)

After September 3, 2015, the City of Pearl, in reliance on its letter (Exhibit 4), denied a utilities permit to a replacement mobile home in Grove Acres. The City of Pearl has never issued a complaint or citation of a violation against any of the Plaintiffs or their manufactured home parks for any reason whatsoever. To do so now, as Exhibit 4 indicates

5

the City will do "in the near future," is a clear effort by Defendants to chart a new method of depriving Plaintiffs of their rights to use their property as the properties have been used in the City for over fifty years.

The fact that the Defendants now, after 50 years, refuse to allow a utilities permit to a manufactured home based on an alleged violation that has not even been specified indicates clearly that Defendants are engaged in purposeful discrimination against Plaintiffs in the City of Pearl. For the reasons set forth below, this Court should issue an immediate preliminary injunction against the Defendants that prevents them from discriminating against Plaintiffs and protects the manufactured home parks' valuable right to use their property in the same way that it has been used for over 50 years in the City of Pearl.

## ARGUMENT

This Court has held that a preliminary injunction should issue if the Movant establishes:

(1)     a substantial likelihood of success on the merits,

(2)     a substantial threat of irreparable injury if the injunction is not issued,

(3)     that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and

(4)     that the grant of an injunction will not disserve the public interest.

*Asbury, MS Gray-Daniels, L.L.C. v. Daniels*, 812 F. Supp. 2d 771, 776 (S.D. Miss. 2011).

6

## I. Substantial Likelihood of Success on the Merits

In *Asbury*, this Court described the evidence necessary to show "substantial likelihood of success on the merits." This Court stated as follows:

[P]laintiffs must provide evidence sufficient to support a *prima facie* case, but the evidentiary standard is not as high as would be required to entitle them to summary judgment.

*Id.* at 776. In this case, Plaintiffs are able to provide more than sufficient evidence to support a *prima facie* case of substantial likelihood of success on the merits. First, Plaintiffs have already proven in state court that the City of Pearl sought to use its 2009 Zoning Ordinance to prevent the manufactured home parks from lawful continuation of their property as a nonconforming use. After an opinion directly on point was handed down by the Mississippi Supreme Court in *Cleveland MHC, LLC v. City of Richland, MS, et al.*, 163 So. 3d 284 (Miss., May 14, 2015) (Exhibit 2), the Circuit Court of Rankin County, Mississippi, ruled that the City of Pearl could not use its 2009 Zoning Ordinance to prevent one of the Plaintiffs herein, Homewood, from the lawful continuation of its property's nonconforming use. The Circuit Court specifically found that the City's actions were "a violation of Homewood's constitutional right to enjoy its property." (Exhibit 3 at p. 5.)

The Mississippi Supreme Court case of *Cleveland MHC* is instructive here. In that case, the Court held that "the nonconformity is the *use of the property* as a mobile-home

7

park, and that use has not been destroyed or changed." *Cleveland MHC*, 163 So. 3d at 288.

The Court went on to observe the following:

> The mobile-home park had been in operation for more than fifty years, most of that time subject to the zoning ordinance and operating as a nonconforming use. For more than thirty years, the City did not enforce the nonconforming use ordinance as to each pad on the property. For three years under the new ownership, the City said nothing about the removal and replacement of mobile homes on the property. The Court of Appeals correctly noted that "[a] citizen's right to be protected in 'the lawful use of his property is one of the most sacred rights reserved to him under our Constitution.'"

*Id.* at 288. (Internal citations omitted.)

As in *Cleveland MHC*, the Plaintiffs' manufactured home parks have been in operation for more than 50 years in the City of Pearl. Not until 2010 did the City attempt to restrict the mobile home park owners' usage rights in their property. Just as in *Cleveland MHC*, the City of Pearl's "decision to do so now seems to be without reason and implies a disregard for the surrounding facts and settled controlling principles." *Id.* at 289.

The Plaintiffs are also substantially likely to be able to show "purposeful discrimination" on the part of the Defendants in their attempts to apply other recently enacted city ordinances to these manufactured home parks. Recognizing that it would not be able to eradicate manufactured housing parks with use of the 2009 Zoning Ordinance, the City of Pearl on or about June 27, 2013, adopted a Rental Housing Code, which was published on September 17, 2014, and by its terms applies to all rental housing units in the City of Pearl, including manufactured homes. The Rental Housing Code includes requirements

8

inconsistent with the due process rights of Plaintiffs as nonconforming uses and intentionally discriminates against them and against moderate and low income housing. Application of the requirements of this Code to the pre-existing manufactured home parks of the Plaintiffs is irrational, arbitrary and capricious, vague and ambiguous, and is designed to deprive the Plaintiffs of their constitutional property rights in their pre-existing manufactured home parks in the City.[2]

In its September 3, 2015, correspondence to counsel for Plaintiffs herein, the City of Pearl recognized that constitutional law would not allow the City to prevent the manufactured home parks from the lawful continuation of their property as a nonconforming use. (*See* Exhibit 4.) But the City did not give up its efforts to rid itself of manufactured home parks and stated in its letter that Plaintiff Homewood had not complied with the City's Rental Housing Code, Property Maintenance Code and Fire Prevention Code and that it "hoped" to have a list of violations completed "in the near future." In spite of the fact that Homewood's manufactured home park, Grove Acres, has never in its entire existence in the City of Pearl been cited or fined for a violation, the City of Pearl shortly after writing the letter on September 3, 2015, denied access to utilities to a replacement home in the park because of

_____

[2]    One example of the arbitrary and capricious application of the City's ordinances is the requirement that manufactured home parks install storm shelters sufficient to house all residents of a park during a storm. Notably, the C-2 district, in which Plaintiff Grove Acres is located, also permits the location of "hotels and motels." Presumably, a hotel is at lease as dense, if not more so, than a manufactured home park or apartment building. Why require an apartment building or manufactured home park to build a storm shelter, but not require the same of a hotel?

9

alleged violations that have to date not been disclosed to Homewood. Upon information and belief, the City of Pearl had not even inspected that manufactured home at the time it denied access to utilities.

The Defendants' reliance on unnamed code violations to deny access to utilities in the manufactured home parks is strong evidence of their intent to attempt an "end-run" around the rulings of the Mississippi Supreme Court and Rankin County Circuit Court. These five (5) manufactured home parks have operated in the City of Pearl for over fifty years without a single code violation. The Rental Housing Code, passed in 2013, includes Section 12-232 which contains detailed provisions about notification of violations, describing a "notice to comply" and a chance to correct. Not only has the City not cited Plaintiffs with a code violation, but it has also never issued a "notice to comply" to Plaintiffs. The absence of citations highlights the Defendants' pretextual reliance on safety concerns in their efforts to shut down Plaintiffs' businesses.

The City's September 3, 2015, letter to Plaintiffs' counsel also indicates the pretextual nature of its intent to apply a Rental Housing Code, Property Maintenance Code or Fire Prevention Code to keep the parks from replacing manufactured homes. In that letter, it states that "[t]he City's Fire Chief has concluded that the high density of structures as are currently located in the Grove Acre Trailer Park pose an unreasonable risk of harm to the occupants of such structures and the neighboring occupants and property, in and outside the

10

'park,' in the likely event of a severe windstorm or tornado." (Exhibit 4)  But these manufactured home parks have been in existence in the City of Pearl for over 50 years, with essentially the same lot layouts.  The City has never attempted to impose restrictions on their use or lot design based on an alleged concern for the safety of the tenants in the parks.

Moreover, the City's conclusion that the "high density" of the mobile homes in the park poses an unreasonable risk of harm and allows the City to refuse to allow replacement of manufactured homes in the park, and for access to utilities, is clearly a violation of the manufactured home parks' nonconforming-use status.  Miss. Code Ann. §17-1-9 states that zoning regulations are designed to "secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements."  (Emphasis added.)  The City of Pearl cited Miss. Code Ann. §17-1-9 when it implemented its 2009 Zoning Ordinance, and also stated in Section 101 of the 2009 Zoning Ordinance that its purpose "is to preserve and promote the public health, safety, morals, and general welfare of the inhabitants of the City of Pearl . . . through the regulation of: . . . the density and distribution of population." (Exhibit 5, Excerpts from the 2009 Zoning Ordinance.)

As noted above, the Mississippi Court in *Cleveland MHC* has already ruled that the manufactured home parks are entitled to continue their nonconforming use under the zoning

11

regulations. And the Rankin County Circuit Court has held that the City of Pearl may not use its Zoning Ordinance to prevent Homewood from the lawful continuation of its nonconforming use. Thus, the City of Pearl is not entitled to use a density zoning regulation that attempts to regulate "concentration of population" to prevent the manufactured home parks from using their parks in the same way that they have been used for decades. The City's alleged concern that "the high density of structures" is a safety issue (*see* Exhibit 4) is a pretextual attempt by the City to circumvent the rulings of the Mississippi Supreme Court and the Rankin County Circuit Court.

The City's alleged concern for the "safety" of the manufactured home park residents is also belied by a 2013 Statement of its Code Enforcement Officer, Brian McGairty. (Exhibit 6.) In that Statement submitted in support of the City's response to a petition filed by Plaintiff Homewood to reverse the interpretation of the 2009 Ordinance and to reverse the denial of a permit to place a manufactured home in a park, Mr. McGairty criticized the number and spacing of the structures in Grove Acres, but did not state that he had safety concerns because of the density. Instead, Mr. McGairty stated only that "[a]esthetically the great number and close spacing of the structures in Grove Acres is unsightly." (Emphasis added.) As to so-called code violations, Mr. McGairty stated:

> Grove Acres does not have an outstanding record of compliance with the City's requirements. The presence of the House trailer is just an example. The City, in the last few years, has established an environmental court and assigned sworn code enforcement officers to near exclusive duty in the code

12

enforcement area. Due to the size of the City, a systematic review of Grove Acres has not been undertaken. However, a cursory ride-through by one of the Code Officers indicated numerous code violations are present despite the recent efforts to spruce up." (Exhibit 6.)

Despite these statements by the City's Code Enforcement Officer in 2013, the City has still not cited Grove Acres (or any other Plaintiff) with any code violations. Mr. McGairty appears to be primarily concerned with the mere "presence of the House trailer," not with safety.

The City's Legislative Findings of Fact and Conclusions, drafted in 2013 in support of its 2009 Zoning Ordinance, are instructive here as to the City's purposeful discrimination against manufactured home parks and its continued discrimination against these parks after the *Cleveland MHC* ruling. These statements are evidence that the City of Pearl is not concerned for the safety and welfare of the manufactured home park tenants, but instead wants to rid itself of "eye-sores" that are a "detriment on property values." In this 2013 report by the City of Pearl, it made the following detrimental statements, among others, about manufactured home parks in Pearl:

32. In 2009, the Governing Authorities found that non-site built residential land uses, within the City, have historically, tended to become eye-sores, a detriment on property values and to present a disproportionate drain on city services, including law enforcement.

33. In 2009, the Governing Authorities found that the commissioned housing study completed in 2008, reflects that the City already has a more than adequate supply of apartments and manufactured housing and that the planners

13

recommended reducing "the land area zoned for manufactured homes within the City of Pearl, Mississippi."

37. In 2009, the Governing Authorities of the City of Pearl, Mississippi, found the clear and expressed [ ] public will is that the City should be, now and in the future, generally a safe, low crime and low density community made up primarily of single family residences in planned and platted neighborhoods with vibrant, orderly and conveniently located commercial districts and convenient opportunities for an array of educational, recreational, social and cultural activities.

75. Grove Acres is not a quality manufactured home community. Aesthetically the great number and close spacing of the structures in Grove Acres is unsightly. The property is incongruent and inconsistent with the commercial uses to the west and the single family site build [*sic*] homes (traditional pitched roof structures with lawns, yards, landscaping and adequate driveway parking) to the south and east and the commercial and governmental uses (such as the City's New Library) to the north. Because of the manufactured homes' boxy appearance they are commonly referred to by many of their occupants and others as "trailers." The boxy manufactured homes in Grove Acres look nearly identical to the boxy pre-1976 mobile homes in the "Hurst Trailer Court" just east of City Hall. There is little to make Grove Acres a community. The tightly packed boxes do not allow the green space and yard areas which would promote social interaction and a sense of community. The small "play ground" is remote to most of the boxes and appears to be little used. Only a few of the "lots" are of sufficient size to allow any landscaping that might improve the appearance of the lots and Grove Acres itself. Grove Acres is no where near to the minimum quality standards set forth in the requirements for a Manufactured Home Subdivision in the MHS District. (Emphasis added.)

94. The City's Housing Study completed in 2008, recommended that the City reduce the amount of manufactured housing in the City. The study remains accurate and applicable to the circumstances in 2013. . . .

101. It is expressly held that public interest in safety, aesthetics, protection of the value and enjoyment of neighboring properties, the quality of life and livability of the area, and bringing the property into line with neighboring

14

commercial uses and having the subject property put to the highest and best use, of the and the [sic] general welfare must be balanced against the unsubstantiated claims of harm or potential to Homewood. When this balancing is done in this case, it is clear that the public interest should such prevail and any burden – real or imagined – on Homewood should be, and hereby is, deemed slight at worst and none [sic] existent at best. This is especially true, given nature of the property as prime commercial real estate; the time period for Homewood to recoup its investment and, by its own choices, to control the speed at which manufactured homes are moved out of Grove Acres.

155. . . . There is absolutely no need for manufactured home parks in the C-2 District. The highest and best use of the Grove Acres property is commercial. . . .

158. Grove Acres and its boxy structures harm the neighboring property values and views from those neighboring properties.

(Exhibit 1.)

The statements made by the City in this report in 2013 indicate clearly the City's disdain for manufactured home parks in the City and its clear desire to rid itself of these parks no matter what. These statements are evidence that the City's expressed concern for the safety and welfare of the manufactured home tenants is nothing more than a pretext for the City's intent to destroy the Plaintiffs' manufactured home parks by attrition, if nothing else.

The Housing Study completed for the City of Pearl in 2008 also demonstrates the City of Pearl's dislike of rental housing, including manufactured homes, which are largely occupied by those with low to moderate income. In that report, it stated that "City leaders

15

identified their concern with the growth of the rental housing community in the past fifteen years, and particularly in the wake of Hurricane Katrina." (Housing Study 2008 for the City of Pearl, Mississippi, at p. 3, Exhibit 7.) The City's "concern" was then associated with items other than safety and welfare, including the socioeconomic status of the tenants. The Housing Study indicated that homeowners had higher incomes than renters: "Controlling for other social and economic factors, home ownership is positively associated with household income for older adults in both rural and urban areas (Miller & Montalto, 1998)." (*Id.* at p. 17.) The Housing Study also stated:

> This study indicates that families moving up the housing ladder, struggling blue collar workers and black renters are most likely to be interested in purchasing a home, but may have difficulties overcoming initial barriers to purchase. The study also indicated that lifestyle renters and elderly life cycle renters are least likely to be interested in purchasing a home.

(2008 Housing Study at p. 23, Exhibit 7.) And: "[r]enters tend to have lower household incomes than homeowners. 2000 Census data indicated that the median household income in Pearl for homeowners was $42,281, while the median household income for renters was $26,899, 26.4% less." (2008 Housing Study at p. 24, Exhibit 7.)

## II. Irreparable Harm

In *Asbury*, this Court set forth what must be shown to prove irreparable harm:

> In order for plaintiffs to be granted preliminary injunctive relief they must show a substantial threat that they would suffer irreparable injury if an injunction is not granted. In order to meet the burden of showing irreparable injury if not awarded an injunction, plaintiffs need to establish that they are under a substantial threat of harm which cannot be undone through monetary damages.

16

812 F. Supp. 2d at 781.

The threat of irreparable harm is clear in this case. Plaintiffs own and operate five manufactured home parks that have been in business in the City of Pearl for over 50 years. Since approximately 2010 the City of Pearl (primarily relying on the 2009 Zoning Ordinance) has attempted to run these manufactured home parks out of the City of Pearl. Although the City of Pearl was ordered by the Rankin County Circuit Court in August 2015 to reverse its actions taken against these manufactured home parks in refusing to allow them to replace manufactured homes, the City of Pearl as recently as September 2015 has indicated that it will continue its refusal to allow manufactured homes to be replaced in the parks, and indeed has refused access to utilities to a home moved into one of the parks.

Thus, in this case, Plaintiffs have shown that there is not just a threat of future harm, there is real and definite harm occurring daily. The United States Supreme Court stated the following:

> The purpose of an injunction is to prevent future violations . . . and, of course, it can be utilized even without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.

*U. S. v. W. T. Grant Co.*, 345 U. S. 629, 633 (1953).

As a result of the City's actions, the manufactured home parks have lost business and will continue to lose business. Even though Plaintiffs are able to place a monetary value on

17

the amount of business already lost due to the City of Pearl's actions, it becomes very difficult to place a monetary amount on the extent of damages to them if they are not allowed in the future to continue to operate their manufactured home parks. The Second Circuit Court of Appeals addressed this point in *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F. 2d 1197, 1205 (2d Cir. 1970), when it stated the following: "Of course, Semmes' [plaintiff's] past profits would afford a basis for calculating damages for wrongful termination, and no one doubts Ford's ability to respond. But the right to continue a business in which William Semmes has engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms; the Semmes want to sell automobiles, not to live on the income from a damages award."

Importantly, when an alleged deprivation of a constitutional right is involved, such as the Plaintiffs' constitutional right to enjoy their property as they have done for decades, courts have held that no further showing of irreparable injury is necessary. *See Elrod v. Burns*, 427 U. S. 347 (1976) (since First Amendment interests were clearly either threatened or in fact being impaired at the time relief was sought, irreparable injury was shown and an injunction was properly directed by the Court of Appeals); *Battle v. Municipal Housing Authority for City of Yonkers*, 53 F.R.D. 423 (S.D. N.Y. 1971) (holding that a requirement that welfare recipients obtain the co-signature of the county department of social services before being allowed to rent municipal housing violated the Equal Protection Clause, so that

18

the continued exclusion of plaintiffs from public housing because of the lack of a co-signature inflicted irreparable harm justifying a preliminary injunction).

The factor of irreparable harm weighs in favor of ordering a preliminary injunction.

### III. Harm to the Plaintiffs versus Harm to the Defendants

The threat of injury to the Plaintiff manufactured home park owners clearly outweighs the threat of injury that injunctive relief may cause the City of Pearl and its Mayor. The threat of injury to the manufactured home park owners is substantial: they are unable to operate their manufactured home parks in the same manner as they have done for the last 50 years. By contrast, granting injunctive relief against the City of Pearl and its Mayor will only require them to allow the Plaintiffs to continue to operate in the City of Pearl in the same manner as they have done for the last 50 years.

### IV. Public Interest

The public has an interest in insuring that municipalities are not allowed to discriminate against low-income or moderate-income individuals and/or families who wish to live in manufactured homes in the City of Pearl. Moreover, there is a public interest in allowing property owners to exercise their constitutional rights to use and enjoy their property in the same manner in which they have done for decades.

19

## V. Conclusion

Pending trial of this matter on the merits, Plaintiffs respectfully pray that the Court grant their Motion for Preliminary Injunction.

Trial is currently set for March 21, 2016, but the City of Pearl has requested a lengthy extension of deadlines which, if granted, will continue the daily harm to Plaintiffs based on Defendants' patently unconstitutional actions. Defendants should not be allowed during this period to prevent the Plaintiffs from exercising their constitutional rights to use their properties as they have done for over fifty years and as ordered by both the Mississippi Supreme Court and the Rankin County Circuit Court.

DATE:        September 29, 2015

Respectfully submitted,

HOMEWOOD COMPANY, L.L.C.
LODES, INC.; and CARY S. and
DOROTHY B. BIERDEMAN
REVOCABLE TRUST

By and through their attorneys

s/ *Kathy K. Smith*
KATHY K. SMITH (MSB #10350)

20

OF COUNSEL:

John G. Corlew (MSB #6526)
Virginia T. Munford (MSB #3654)
Kathy K. Smith (MSB #10350)
CORLEW MUNFORD & SMITH PLLC
4450 Old Canton Road, Suite 111 (39211)
Post Office Box 16807
Jackson, MS  39236-6807
Phone: 601-366-1106
Fax: 601-366-1052
jcorlew@cmslawyers.com
vmunford@cmslawyers.com
ksmith@cmslawyers.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I have caused the foregoing document to be

served upon the following using the Court's ECF system:

**James A. Bobo**
jbobo@jbobolaw.com

**John G. Corlew**
jcorlew@cmslawyers.com,sbowen@cmslawyers.com

**Virginia T. Munford**
vmunford@cmslawyers.com,aprisock@cmslawyers.com

**Kathy K. Smith**
ksmith@cmslawyers.com, aprisock@cmslawyers.com

DATED:     September 29, 2015

_____ s/ *Kathy K. Smith* _____

KATHY K. SMITH

21