IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HOMEWOOD COMPANY, L.L.C.:  PLAINTIFFS
LODES, INC.; AND CARY S. AND
DOROTHY B. BEIRDEMAN
REVOCABLE TRUST

VS.  CIVIL ACTION NO. 3:14-cv-00907-HTW-LRA

CITY OF PEARL, MISSISSIPPI
and BRAD ROGERS  DEFENDANTS

CITY'S MEMORANDUM BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

The City of Pearl, Mississippi ("Pearl" or "City") submits this Memorandum Brief in Support of its Motion For Preliminary Injunction.

FACTS

The City is located in a tornado alley: FEMA Wind Zone IV (250 mph).

The Mississippi Emergency Management Agency and the National Weather Service warn the public that if a tornado warning is issued that persons in the boxes, such as the Plaintiffs rent to men, woman and children as homes, should evacuate the box, even if the box is tied down, and take shelter in a building with a strong foundation, or if one is not available, lie in a ditch or low lying area which is a safe distance way from the box. As a practical matter, due to the number of deaths of persons in cars during a tornado, the time to abandoned these boxes and take shelter is when a tornado watch is issued.

On April 28, 2014, between the hours of 6:27 p.m., and 7:15 p.m., an EF-3 Tornado with speeds up to 156 mph ripped a 400 yard wide path for 30.1 miles in Hinds, Rankin and Scott Counties. The tornado caused 1 death and at least 20 reported injuries. Numerous persons were injured in Pearl due to the foreseeable failure of boxes used as homes exactly like the boxes used as homes located in the the trailer parks owned and operated by the Plaintiffs.

The damage involved boxes which had splintered into 1000s of fragments which had travelled at high speed within the trailer park and on to neighboring properties.

The damage involved boxes which had rolled over and crushed vehicles and other boxes. This process also created 1000s of fragment which had travelled at high speed within the trailer park and on to neighboring properties.

The City's First Responders (Fire and Police) responded to the trailer park while weather warnings were still in place. These Responders, and other City Employees and Mayor Brad Rogers, braved the weather and began digging through the extremely large debris field in search of bodies and survivors. Luckily no one was killed but many suffered injuries. Many lost all or most of their worldly possessions.

The City's expense in responding to the disaster at the trailer park ran into the 10s of thousands of dollars.

The Plaintiffs operate trailer parks located in Pearl, Mississippi. These parks contain factory built boxes which are used as homes by the Plaintiffs' tenants. In general, these boxes are tightly packed on the premises of the Plaintiffs.

Men, women and children reside in the Plaintiffs' boxes.

The boxes are of various ages and manufacturers. The boxes are in various condition. The majority of the boxes are older model boxes. None of Plaintiffs' boxes are rated to withstand FEMA Wind Zone IV (250 mph). None of Plaintiffs' boxes are rated to withstand an EF-3 tornado such as the one which struck Pearl in April, 2014. In all likelihood, none of Plaintiffs' boxes are rated to withstand a wind load of more that 70 mph wind speed. According to the National Weather Service, severe thunderstorms are capable of producing winds in excess of 70 mph.

On June 27, 2013, the Governing Authorities of the City adopted a "Rental Housing Code." (RHC). The RHC took effect on October 17, 2014.

In part. the RHC requires the Plaintiffs to:

1. have an approved fire extinguisher in each box (Section 12-224(b));
2. have on their premises a storm shelter capable of comfortably sheltering the number of persons which represents the maximum capacity of their parks (Section 12-224(b)).

The Fire Code adopted by the City, requires that the Plaintiffs' trailer parks have appropriate Fire Apparatus Access Roads (International Fire Code Chapter 5) and also appropriate means of ingress and egress to factory built homes (steps with 4 foot square landings not screwed or attached to the factory built home).

Each Plaintiff is in violation of the requirement to install storm shelters.

Each Plaintiff is in violation of the requirements of installation of appropriate Fire Apparatus Access Roads and property ingress and egress.

There are other violations which do not present an emergency at this time.[1]

Upon information and belief each Plaintiff is in violation of the fire extinguisher requirement.

For example, in the opinion of Fire Chief Carl Kibby (See Ex. 1 to Motion), Homewood's Grove Acres trailer park presents the following dangers to the general public:

> In my expert opinion, the properties with site built structures on Oak Park Drive and the neighboring properties, including but not limited to the City Hall Complex, would likely be adversely impacted by the flying debris and debris field which would result from a high wind events, coming from the southwest and which could strike the structures located in the Grove Acre Trailer Park. Wind blown debris from structures, such as those structures currently located in the Grove Acre Trailer Park, is highly dangerous. It is especially dangerous to people fleeing such dangerous structures, like those structures located in in the Grove Acre Trailer Park, to seek the safety of a ditch or low lying area. See MEMA warnings, supra note 3.
>
> In my expert opinion, the high density of such structures as are currently located in the Grove Acre Trailer Park poses an unreasonable risk of harm to the occupants of such structures and the neighboring occupants and property, in and outside the "park," in the likely event of a severe wind storm or tornado. Search and rescue and emergency debris handling at and from a "park" with this level of density, after the likely event of a severe wind storm or tornado, would likely involve the commitment of significant departmental personnel and equipment. Even if the required shelters are install, these density levels still pose an unnecessary risk and real potential for an inordinate demand on departmental resources.
>
> According to the Office of the Mississippi Insurance Commissioner and the Mississippi State Fire Marshall: "Wiring procedures used in Factory-Built Housing differ considerably from those used in conventional homes. Improper wiring of factory-built homes often occurs, resulting in overheating of wiring, socket inoperability, and even the risk of electric shock when touching the house frame." Overheating wires pose a significant fire risk and a danger to occupants of such structures and neighboring structures where such a fire might spread.

---

[1] The City Staff is preparing and plan to submit a provision requiring a NOAA radio and other written communications in place of the current RHC provisions on storm warnings.

I have reviewed the unofficial "plat" which the owner of Grove Acres Trailer Park has made up. The layout of the "lots" on said plat, and the layout conditions currently existing now, were not, in my opinion, reviewed or approved by a competent fire and life safety professional. In my opinion, the "park" as it is currently configured, with the present density, placement and spacing of the structures thereon, and the utility configurations pose an unreasonable risk of harm to fire fighters and life safety responders, the occupants of such structures and the neighboring occupants and their property in the likely event of fire. This danger is compounded by the inadequate parking and parking congestion which I have seen in the "park" There are no fire hydrants located in the Grove Acres Trailer Park. Fires often "sweep" through parks such as the Grove Acres Trailer Park.

In my expert opinion, everyone would be far safer if the Grove Acres Trailer Park was immediately transitioned to a conforming commercial use as zoned. Until that occurs, I strongly recommend that the number of structures located in Grove Acres Trailer Park be reduced to no more than six (6) structures (HUD Zone II or III) per net acre and that the "park" be reconfigured to comply with the minimum standards of the City's Development Ordinance (specifically the installation of fire hydrants and adequate access for fire apparatuses), the Rental Code (Required Storm Shelters and warning mechanisms), the Stormwater Control Ordinance and the minimum standards of the City's Single Family Residential District which it abuts or even the minimum standards of the Manufactured Home Subdivision District.

The dangers presented by fire and severe weather events are very real and are not remote. This reduction of density and compliance with the recommended minimum standards are reasonable and will directly increase the safety of the children, women and men residing in and around the Grove Acres Trailer Park and minimize danger to them and their property to the extent these matters are within our control by sound planning and implementation.

In my position I routinely deal with issues involving the cost of compliance. Here given the risk of harm, the cost of compliance is undoubtedly reasonable. Similar cost are routinely borne by developers on projects within the City, and elsewhere in Mississippi, so it would be difficult to describe the cost as unreasonable without calling into question the common format followed in this state for residential development (or commercial development) and the enforcement of safety codes.

The City is not acting under its Zoning Ordinance but is temporally denying approvals to the Plaintiffs for placement of allowed structures until the Plaintiffs have made their properties

safe and fully complied with the City's Code provisions concerning safety. As Chief Kibby informed Homewood:

> All required inspections will be conducted in accordance with the requirements of the Mississippi and Federal Constitutions. If inspections are not allowed freely and voluntarily then the City will proceed as allowed by law. The City welcomes Homewood's cooperation with inspections to avoid any unnecessary delays.
>
> Homewood has not complied with the City's Rental Housing Code, Property Maintenance Code and Fire Prevention Code. The City's Fire Chief has concluded that the high density of structures as are currently located in the Grove Acre Trailer Park pose an unreasonable risk of harm to the occupants of such structures and the neighboring occupants and property, in and outside the "park," in the likely event of a severe wind storm or tornado. These failures to comply and dangerous circumstances prevent the approval of the placement of any new residential structures on Homewood's properties despite the allowance of replacement by the City's Zoning Ordinance. In addition, as you are aware the Untied States District Court for the Southern District of Mississippi has jurisdiction over the City's action to abate the nuisances and dangerous circumstances and illegal circumstances which exist at Homewood's properties. Pending the outcome of this federal litigation, the Department of Community Development and City's Fire Marshall will not approve the placement of any manufactured home on Homewood's property absent those properties being brought into compliance with those non-zoning codes and the premises being made safe, in fact.

See Exhibit to Plaintiffs' Motion. {Docket Entry #29-4].

The City has not "forced" the Plaintiffs out of business nor attempted to "forced" the Plaintiffs out of business.

The City is in full compliance **Cleveland MHC, LLC v. City of Richland**, 2013-CT-00286-SCT (May 14, 2015). In fact on June 2, 2015, the Governing Authorities of the City of Pearl, Mississippi, adopted a resolution directing the Department of Community Development to comply with **Cleveland MHC, LLC v. City of Richland**, 2013-CT-00286-SCT (May 14, 2015).

Contrary to the claims of the Plaintiffs, the City is not seeking or attempting to enforce any zoning regulation contrary to the Mississippi Supreme Court's decision in *Cleveland MHC, LLC v. City of Richland.*

The City is merely attempting to make the City safer.

LAW

Pearl's Authority Under State Law

Pearl is authorized to adopt and enforce an array of ordinances, most of which are not zoning ordinances. In fact Mississippi Law expressly declares that local regulations which are more stringent than an adopted zoning ordinance control and govern over contrary provisions in a zoning ordinance. Mississippi Code §17-1-21.[2]

Pearl has the power to make and enforce regulations to secure the general health of the municipality; and to prevent, remove, and abate nuisances. Mississippi Code §21-19-1. Pearl can adopt and enforce building codes, plumbing codes, electrical codes, gas codes, sanitary codes, or any other codes dealing with general public health, safety or welfare, or a combination of the same, by ordinance. Mississippi Code §21-19-25. Pearl is authorized to adopt and enforce all needful police regulations necessary for the preservation of good order and peace of the municipality and to prevent injury to, destruction of, or interference with public or private property. Mississippi Code §21-19-15.

Pearl has "the power to enter into and examine all dwelling houses, lots, yards, inclosures, [sic] and buildings of every description as well as other places, in order to ascertain

---

[2] This provision shows that it is nonsense and an affront to reason and the requirement of full disclosure for the Plaintiffs to argue that all of Pearl's safety regulations are "zoning laws" or that zoning laws are the only laws in Mississippi which may regulate the use of real property.

whether any of them are in a dangerous state. Such authorities shall have the power to take down and remove buildings, walls, and superstructures that may become insecure or dangerous, and to require the owner of insecure or dangerous buildings, walls, and other erections to remove or render the same secure and safe at the cost of the owner of such property." Mississippi Code §21-19-21.

Safety Regulations Are Not Banned Or Impaired By Federal Law

The United States Supreme Court "has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." ***Loretto v. Teleprompter Manhattan CATV Corp.***, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).

Particularly the Court has clearly established that cities can require property owners to modify their properties to comply with with safety regulations. ***Queenside Hills Realty Co., Inc. v. Saxl***, 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096 (1946).("Protection of the safety of persons is one of the traditional uses of the police power of the States."). See also ***Young v. American Mini Theatres Inc.***, 427 U.S. 50, 71 (1976) ("a City's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.'" (plurality opinion)).

In ***Queenside Hills*** a property owner refused to retrofit his structure with mandated sprinkler based on his claims, in part, that: (1) his structure was safe; (2) that it complied with building laws and regulations when built; and (3) that the cost to install sprinklers was 30% of the value of the structure. 328 U.S. at 82. The Court rejected, out of hand, the property owner's due process claim by noting: "But the legislature may choose not to take the chance that human life will be lost in lodging house fires, and adopt the most conservative course which science and

engineering offer. It is for the legislature to decide what regulations are needed to reduce fire hazards to the minimum. Many types of social legislation diminish the value of the property which is regulated." Id at 83.

Furthermore, the ***Queenside Hills*** Court rejected the property owner's claim that the regulation violated the Equal Protection Clause. "The legislature is entitled to hit the evil that exists." Id. at 84. See ***Renton v. Playtime Theatres, Inc.***, 475 U.S. 41, 47-48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) ("This Court frequently has upheld underinclusive classifications on the sound theory that a legislature may deal with one part of a problem without addressing all of it. See e.g., ***Williamson v. Lee Optical Co***., 348 U.S. 483, 488-489 (1955)."). ***See also New Orleans v. Dukes***, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); ***Geduldig v. Aiello,*** 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974); and ***Nixon v. Administrator of Gen. Servs***., 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).

Likewise with regard to an alleged wrongful taking, the ***Queenside Hills*** Court stated:

> Many types of social legislation diminish the value of property which is regulated. The extreme cases are those where in the interest of public safety or welfare the owner is prohibited from using his property. We are dealing here with a less drastic measure. **But in no case does the owner of property acquire immunity against the exercise of the police power because he constructed it in full compliance with the existing laws.** The police power is one of the least limitable powers, and in its operation often cuts down property rights.

328 U.S. at 83 (citations omitted) (emphasis added). See also ***Third & Catalina Associates v. City of Phoenix***, 895 P.2d 115, 182 Ariz. 203 (Ariz.App. Div. 1 1994) (upheld ordinance requiring installation of sprinklers).

The principles in ***Queenside Hills*** are still sound today. Safety regulations do not result in a compensable taking even if the regulation results in a denial of all use. ***Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency***, 535 U.S. 302, 3039, 122 S.Ct. 1465, 152 L.Ed.2d 517, 70 U.S.L.W. 4260 (2002) (regulation temporarily denying an owner all use of property might not constitute a taking if the denial was part of the State's authority to enact safety regulations). A regulatory taking might be found, in enforcement of a regulation other than safety, in "'the extraordinary circumstance when no productive or economically beneficial use of [the entire parcel of] land is permitted.'" 535 U.S. at 330.

### A Preliminary Injunction Requiring the Plaintiffs To Make Their Properties Safe In Compliance With The City's Ordinances Is Appropriate

A party seeking a preliminary injunction must satisfy each of four criteria: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the substantial injury outweighs the threatened harm to the party against whom the injunction is sought; and (4) granting the injunction will not disserve the public interest. ***Planned Parenthood Ass'n of Hidalgo Cnty., Tex., Inc. v. Suehs****,* 692 F.3d 343, 348 (5th Cir. 2012).

The City has demonstrated a substantial likelihood of success on the merits.

There is a substantial threat of irreparable harm. "To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable. The plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." ***Humana,***

*Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986) (citations/footnotes omitted).

The product "sold" by the Plaintiffs are death traps during a tornado. History shows that Pearl is a location where high wind events, such as tornados, occur with frequency. These high wind events and have in fact destroyed factory built houses (which are in fact substantially different from site built structures) in Pearl and injured people and strew dangerous high speed projectiles within the park and on to neighboring properties and some not so neighboring properties. And while in April of 2014, Pearl did not experience the death of any trailer park inhabitants the experience of other locations in the State, give not reason to assume that Pearl is immune to such deaths occurring in the future. The existence of safety can not be expressed in terms of money. Nor would the City be able to, effectively seek adequate money damages for the days during which the properties were unsafe and out of compliance or even for the day on which disaster strikes. See *Walker v. Apex Wind Construction, LLC*, CIV-14-914-D (OKWDC January 26, 2015) (threats to safety warranted injunction).

The substantial injury to the City outweighs the threatened harm to the Plaintiffs. The needless exposure of hundreds of people to life threatening dangers would be greatly reduced by the Plaintiffs' compliance. The City has a substantial and material interest, day in and day out, in protecting and preserving the general welfare, including the safety of the City's inhabitants. Being denied safety and the erosion of the general welfare are substantial interest and the injury to these interest outweigh the small financial burden to the Plaintiffs both in terms of the moratorium on placement of new structures until safety compliance is achieved and in terms of the small in comparison financial burden of the Plaintiffs coming into compliance.

The Plaintiffs' obstinate and unreasonable refusal to comply with the City's Safety Regulation disserves the public interest. Therefore the injunction can not disserve the public interest. Having a place of safety to go to instead of lying in a ditch during a tornado serves the public interest. Not having your neighbor's fire spread to your trailer serves the public interest. Not having your neighbor's trailer roll over and crush your car or your loved one serves the public interest. Not having the City's First Responders tied up search debris or suffering injury trying to fight and contain a trailer fire serves the public interest. An injunction achieving these goals does not disserve the public interest.

Here is what the Plaintiffs expect their tenants to try to live through and the City's Employees and Officials to respond to. Tornados can not be prevented but preparation and safety measures can save lives and lessen the impact on the public and the City:



WHEREFORE PREMISES CONSIDERED the City of Pearl, Mississippi prays that a preliminary injunction be issued prohibiting the Plaintiffs from placing any additional structures, including but not limited to factory built homes, in their trailer parks in Pearl, Mississippi, until said parks and the structures therein have been made safe and otherwise complied with the City's Codes concerning safety, including but not limited to the Rental Housing Code and the Property Maintenance Code, and the Plaintiffs have removed or reconfigured their moveable boxes to end those conditions which presents an unreasonable and unnecessary risk of harm to the inhabitants of these parks, the neighboring property owners and inhabitants and the City's first responders.

The City prays for such other and additional relief to which it may be entitled.

This the 30th Day of September, 2015.

    Respectfully submitted,

    City of Pearl, Mississippi

    By <u>s/James A. Bobo</u>
    James A. Bobo
    Attorney for The City of Pearl, Mississippi

James A. Bobo
Mississippi Bar No. 3604

2561 Old Brandon Road, No. 086
Post Office Box 97998
Pearl, Mississippi 39288
(601) 506-6727

Attorney for the City of Pearl, Mississippi

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2015, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which sent notification of such filing to the following: John Corlew and Virginia Mumford and Greg Hemphill and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants: None.

s/James A. Bobo<br>
James A. Bobo